UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| JEFFREY FORBES,                                ) | |
|        Plaintiff,                                  ) | |
| v.                                              ) | Docket No. 2:21-cv-00103-GZS |
| CARLOS DEL TORO, SECRETARY    ) OF THE NAVY,                       ) | |
|        Defendant.                               ) | |

**DEFENDANT CARLOS DEL TORO'S
MOTION TO DISMISS PLAINTIFF'S COMPLAINT FOR
<u>FAILURE TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED</u>**

Defendant Carlos Del Toro, Secretary of the Navy,[1] hereby moves to dismiss the Complaint brought by Plaintiff pursuant to Section 504 of the Rehabilitation Act, 29 U.S.C. § 701 *et seq.*, and the Americans with Disabilities Act, 42 U.S.C. § 12101 *et seq.*, for failure to state a claim upon which relief can be granted under Federal Rule of Civil Procedure 12(b)(6).

### I. RELEVANT FACTUAL AND PROCEDURAL BACKGROUND[2]

Plaintiff Jeffrey Forbes, a resident of Peabody, Massachusetts, "suffers from permanent cognitive, vision, and speech impairments as a result of a brain tumor that was discovered in 2003." Complaint ("Compl.") ¶¶ 1, 3. In March 2015, Plaintiff applied for a police officer position opening at the Portsmouth Naval Shipyard in Kittery, Maine. *Id.* ¶ 4. Despite Plaintiff's disabilities resulting from the aforementioned brain tumor, Plaintiff maintains that at

---

[1] Carlos Del Toro was sworn in as the Secretary of the U.S. Navy on August 9, 2021. Pursuant to Federal Rule of Civil Procedure 25(d), Secretary Del Toro should be automatically substituted as the sole Defendant in this action in his official capacity as Secretary of the U.S. Navy. *See* Fed. R. Civ. P. 25(d) ("An action does not abate when a public officer who is a party in an official capacity dies, resigns, or otherwise ceases to hold office while the action is pending. The officer's successor is automatically substituted as a party. Later proceedings should be in the substituted party's name . . .").

[2] The facts set forth herein are derived from Plaintiff's July 10, 2020 Complaint and Jury Demand, ECF No. 1 (the "Complaint"), and Plaintiff's Exhibit A attached thereto, as well as the public docket associated with this matter.

the time he applied for the police officer position, he "was able to meet the essential functions and physical requirements of the" position. *Id.*

Plaintiff received a "tentative offer of employment" on July 8, 2015. *Id.* ¶ 7. Plaintiff understood that such tentative offer could be rescinded if he failed to meet the necessary "pre-employment requirements" associated with the position. *Id.* ¶ 6.

Approximately one month later, Plaintiff underwent the mandatory pre-employment examination, which was conducted by Dale R. Harmon, CAPT, USN. *Id.* ¶ 8. In the "Conclusions" section of the Certificate of Medical Examination, CAPT Harmon wrote that Plaintiff had several "limiting conditions," including that he was "unable to run, does not meet vision requirements for police or MVO, poor rapid muscular coordination, [and] mild to moderate speech disturbance." Compl. Ex. A at 4. CAPT Harmon nevertheless recommended that Plaintiff be "hire[d] or retain[ed]," but went on to note that Plaintiff "cannot pass the run requirement, does not meet vision standards, [has] poor rapid fire muscle coordination, [is] not qualified to operate a motor vehicle due to vision (MVO)," and that "[a]ll items would need to be accommodated if hired." *Id.* at 5.

Plaintiff maintains that he did not hear back from Defendant for some time until he made contact in October 2016, at which point he learned that his offer had been rescinded. Compl. ¶ 10. On November 15, 2016, Plaintiff was notified that his offer was rescinded because he failed "to meet a condition of employment in not being successful with passing the pre-employment physical." *Id.* ¶ 12. Three days later, Plaintiff filed a complaint with the Equal Employment Opportunity Commission for "unlawful discrimination." *Id.* ¶ 13.

Plaintiff ultimately filed a complaint in the United States District Court for the District of Massachusetts on July 14, 2020. Defendant filed a Motion to Dismiss or Transfer for Lack of

Venue in that court on March 8, 2021; Judge Nathaniel M. Gorton allowed the motion to transfer on April 9, 2021; this matter was officially transferred to this Court on April 12, 2021.

## II.   ARGUMENT

Plaintiff's Complaint should be dismissed for its failure to state a claim upon which relief can be granted. Specifically, as a result of his allegations misstating the essential functions of the position to which he applied, Plaintiff fails to properly allege that he is a qualified individual with a disability, as required by the Rehabilitation Act and this Circuit's precedent. Accordingly, his Rehabilitation Act failure-to-accommodate claim should be dismissed.

Plaintiff's allegations regarding violations of the Americans with Disabilities Act should be dismissed as well, as the ADA is not available to applicants for federal employment positions. Additionally, to the extent that Plaintiff is attempting to allege retaliation in violation of the Rehabilitation Act's anti-retaliation protections, such claim should be dismissed, because Plaintiff fails to properly allege the elements of a retaliation claim.

### A.   Legal Standard

To survive a Rule 12(b)(6) motion to dismiss, a complaint "must contain sufficient factual matter to state a claim to relief that is plausible on its face." *Rodriguez-Reyes v. Molina-Rodriguez*, 711 F.3d 49, 53 (1st Cir. 2013). Courts within the United States Court of Appeals for the First Circuit employ a two-pronged approach in resolving motions to dismiss for failure to state a claim. *Ocasio-Hernandez v. Fortuno-Burset*, 640 F.3d 1, 12 (1st Cir. 2011). First, the Court must identify and disregard statements in the complaint that are mere legal conclusions couched as factual allegations. *Id.* (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). Second, the Court "must determine whether the remaining factual content allows a reasonable inference that the defendant is liable for the misconduct alleged." *A.G. ex rel. Maddox v. Elsevier, Inc.*,

732 F.3d 77, 80 (1st Cir. 2013) (internal quotation marks and citation omitted); *see also Carrero-Ojeda v. Autoridad de Energia Electrica*, 755 F.3d 711, 717 (1st Cir. 2014) (the Court's ultimate task is to determine whether, after taking all well-pleaded facts as true and "drawing all reasonable inferences in [plaintiff's] favor," the complaint "plausibly narrate[s] a claim for relief").

> **B.      Plaintiff's Rehabilitation Act Failure-to-Accommodate Claim Should Be Dismissed for Failure to State a Claim Upon Which Relief Can Be Granted**

In order to assert a claim for discrimination based on failure to accommodate under the Rehabilitation Act, a plaintiff must establish

> (1) that she suffered from a "disability" within the meaning of the statute; (2) that she was a qualified individual in that she was able to perform the essential functions of her job, either with or without a reasonable accommodation; and (3) that, despite her employer's knowledge of her disability, the employer did not offer a reasonable accommodation for the disability.

*Calero-Cerezo v. U.S. Dep't of Justice*, 355 F.3d 6, 20 (1st Cir. 2004).[3] Here, Plaintiff has failed to properly allege that he "was able to perform the essential functions" of the police officer position, and accordingly his complaint must be dismissed.

In the First Circuit, an "essential function" is defined as "a fundamental job duty associated with a particular position," which may extend beyond an individual's skills or experience, "even including such individual or idiosyncratic characteristics as scheduling

---

[3] In the "Introduction" section of Plaintiff's Complaint, Plaintiff states that his request for relief is "for discrimination based on his handicap and failure to provide a reasonable accommodation under the Rehabilitation Act and the Americans with Disabilities Act." Compl. at 1. However, in the section generally reserved for articulation of the counts of the complaint, Plaintiff references only a failure to make reasonable accommodation and "unlawful retaliate[ion]." For the purposes of this motion, Defendant assumes that Plaintiff's allegation of "discrimination" is really "discrimination based on failure to accommodate," not a freestanding discrimination claim apart from the reasonable accommodation claim. In any event, even if Plaintiff were to allege a discrimination claim apart from his reasonable accommodation claim, such claim would require that Plaintiff allege that he was able to perform the essential functions of his job. *See Hines v. Boston Public Schools*, 264 F. Supp. 3d 329, 334 (D. Mass. 2017) (discussing elements of disability discrimination claims and reasonable accommodation claims). As Defendant argues *infra*, Plaintiff has failed to properly allege that he could perform such essential functions of the position at issue, and thus *any* disability discrimination claim—be it freestanding or based on a failure to accommodate—must be dismissed.

flexibility." *Calero-Cerezo*, 355 F.3d at 22 (internal citations and quotation marks omitted). In determining which functions are essential, "a court must give considerable deference to an employer's judgment regarding what functions are essential for service in a particular position." *Shannon v. New York City Transit Authority*, 332 F.3d 95, 100 (2d Cir. 2003). "[I]f an employer has prepared a written description before advertising or interviewing applicants for the job, this description shall be considered evidence of the essential functions of the job." 42 U.S.C. § 12111(8).

Because "the complex question of what constitutes an essential job function involves fact-sensitive considerations [which] must be determined on a case-by-case basis," *Gillen v. Fallon Ambulance Service, Inc.*, 283 F.3d 11, 25 (1st Cir. 2002), courts have sometimes found that "the essential duties of [an employee's] position are a question of fact" which are not required to be "alleged with particularity" in a complaint in order to survive a Rule 12(b)(6) motion to dismiss, *Floyd v. Lee*, 968 F. Supp. 2d 308, 327 (D.D.C. 2013). However, courts also have made clear that regardless of this relatively modest pleading requirement, a complaint is still subject to dismissal if the plaintiff fails to properly allege that he or she can perform the essential functions of the subject position. *See Kiniropoulos v. Northampton Cnty. Child Welfare Serv.*, 606 F. App'x 639 (3d Cir. 2015) (upholding 12(b)(6) dismissal for failure to adequately plead that the plaintiff could perform the essential functions of the position with or without an accommodation).

In paragraph four of Plaintiff's Complaint, he maintained that

> [d]espite his disabilities, Mr. Forbes was able to meet the essential functions and physical requirements of the police officer position at the Naval Shipyard, which involved [1] sitting or standing [in] the guard house to check visitors, [2] driving or walking around to patrol the grounds, and [3] sitting at the front desk as dispatchers while monitoring security cameras.

Compl. ¶ 4.  Were this all Plaintiff had said about the essential functions of the police officer position, such allegations may have been sufficient to satisfy, for the purposes of Rule 12(b)(6), the requirement that he allege he was a qualified individual able to perform the essential functions of that position.  Although this statement of the essential functions of the police officer position is wholly factually inaccurate, the pleading stage would not be the proper point for Defendant to demonstrate that Plaintiff's description is a gross misstatement of the essential duties of a Portsmouth Naval Shipyard police officer.

Plaintiff, however, went further than the brief description he provided in paragraph four of his Complaint.  Plaintiff attached an exhibit to his complaint which contained, *inter alia*, a description of the position for Police Officer, GS-0083-3/4/5/6:[4]

> 3. Brief description of what the position requires the employee to do.
>
> The work requires extended period of physical exertion derived from such activities as running, walking, standing, climbing, bending, driving, and lifting/carrying heavy items.  Requires physical stamina, agility and strength to defend themselves, defend others, pursue and apprehend or detain suspects.  DoD and Department of Navy regulations require at a minimum a periodic physical agility test.  Officers undergo sustainment training in defensive tactics to include Oleoresin Capsicum (OC) qualifications, handcuffing, Taser, and firearms qualifications which require physical strength, skill and stamina.  Note: Qualification includes exposure to Oleoresin Capsicum spray as well as Taser when required for assigned duties as part of the training curriculum/qualification to carry.
>
> The work is performed in an environment which involves exposure to regular and recurring discomfort, such as variations in weather while performing patrols.  The incumbent may be exposed to high levels of noise in certain industrial settings, destructive weather or higher FPCON.  The work involves moderate and high risks and possible endangerment of life or serious injury that requires the exercise of safety precautions and use of personal protective equipment such as body armor, reflective vests, coats, gloves, helmet, boots, goggles, masks, shields, etc.
>
> The following are some of the duties of the position:

---

[4] Because the exhibit consists of a scan which may be difficult to read, page three of the exhibit, part three, is reproduced in its entirety here, with the exception of the final paragraph of that part, which addresses a hearing conservation program.

> Incumbent possesses authority to apprehend personnel, carry a firearm, Taser and Oleoresin Capsicum (OC) spray. Must be proficient in use of authorized nonlethal weapons and able to subdue a suspect in accordance with "use of force continuum" guidance. Operates specialized weapons and special purpose equipment such as night observation devices (night vision) and portable sensor/intrusion detection equipment. Participates in training, exercises, and evaluations to increase proficiency and maintain learned skills and knowledge.
>
> Responds to intrusion detection system (IDS) alarms, emergency calls, complaints, and other calls for service while on duty. Performs a full range of force protection, anti-terrorism and sentry duties at installations or activities. Defends installation personnel, equipment, and resources from terrorist threats or hostile attacks.
>
> Acts as the Incident Commander (IC) for significant and catastrophic events as required. May direct other functional first responders, when appropriate, in accordance with the structure of the National Incident Management System.
>
> Operates motor vehicles having a gross vehicle weight of 7,000 pounds or less, loading capacities of 1 ton or less, manual transmissions, and 2 or 4 wheels drive. May be required to qualify on police bicycles and other rough terrain vehicles such as ATVs and snow mobiles.
>
> At installations conducting law enforcement/security operations in navigable waters, incumbent will be certified in all aspects of vessel safety, handling and related safety requirements in support of High Value Escort (HVU) procedures. Must qualify on the nautical rules of the road by U.S. Coast Guard standards if serving as a coxswain in harbor security boats.
>
> . . . .

Compl. Ex. A at 3. This job description, incorporated by Plaintiff into his Complaint,[5] and created by the Navy, evidences Defendant's view of the requirements of the police officer position, and courts in this circuit "generally give substantial weight to the employer's view of job requirements in the absence of discriminatory animus." *Ward v. Massachusetts Health Research Institute, Inc.*, 209 F.3d 29, 34 (1st Cir. 2000); *see also id.* (noting that EEOC

---

[5] Because Plaintiff attached this document to his Complaint and references it therein, *see* Compl. ¶ 8, the Court may consider it when evaluating this Motion without converting the Motion into a motion for summary judgment. *See Smith v. United States*, 561 F.3d 1090, 1098 (10th Cir. 2009) ("In evaluating a Rule 12(b)(6) motion to dismiss, courts may consider not only the complaint itself, but also attached exhibits, and documents incorporated into the complaint by reference.").

interpretive guidance "indicate additional fact-intensive considerations, including among others[,] written job descriptions" (citing 29 C.F.R. § 1630.2(n)(3)).

Defendant will not attempt to finely delineate here the precise contours of the essential functions of the police officer position, as such an undertaking would involve the introduction of material outside of Plaintiff's Complaint and the documents he attached to it. However, it is nevertheless clear from a comparison of the job description for the position to which Plaintiff applied and Plaintiff's own description of what he claims to view as the essential functions of that position that the job description and Plaintiff's description are describing two entirely different positions with radically different essential functions. Plaintiff has described duties that are more consistent with those of an unarmed suburban mall security guard—sitting in a guard booth, patrolling the grounds, and monitoring security cameras. The position description Plaintiff attached to his Complaint make it clear what this position actually is: a true armed law enforcement and physical security role protecting a critical piece of United States Navy infrastructure and the personnel and equipment located therein.

Because Plaintiff has posited a description of the essential functions of the police officer position that bears so little resemblance to the actual duties of that position as described in the Navy's position description, Plaintiff has not, in fact, alleged that he can perform the essential functions of the police officer position. Rather, he merely has alleged that he can perform the "essential functions" of a hypothetical position that does not exist. Accordingly, Plaintiff has failed to allege that he is a "qualified individual" under the Rehabilitation Act, and his Complaint should be dismissed.[6] *See Kiniropoulos*, 606 F. App'x at 642.

---

[6] Defendant recognizes that, were the Court to dismiss Plaintiff's Complaint for failure to allege that he can perform the essential functions of the police officer position, Plaintiff likely would be provided with an opportunity to amend his Complaint to properly allege that he could perform those essential functions. However, based on Defendant's understanding of Plaintiff's disabilities and the requirements of the police officer position, Defendant has serious

C. **Plaintiff's Americans With Disabilities Act Claims Should Be Dismissed for Failure to State a Claim Upon Which Relief Can Be Granted**

The ADA is not available to applicants for federal employment positions. *See Calero-Cerezo*, 355 F.3d at 11 n.1; *Roman-Basora v. Potter*, Civil No. 08-1096 (DRD), 2011 WL 29262, at *3 (D.P.R. Jan. 31, 2011) (noting that "the ADA does not apply to alleged discrimination on the basis of disability in federal employment" (internal quotation marks omitted)); 42 U.S.C. § 12111(5)(b)(i) (noting that "[t]he term 'employer'" in the ADA "does not include—(i) the United States"). As Exhibit A to Plaintiff's Complaint makes clear, the Police Officer position is a "General Schedule" (GS) position administered by the United States Office of Personnel Management, and therefore is a federal employment position. *See* Compl. Ex. A at 3; *see also Hicks v. Johnson*, 755 F.3d 738, 741 n.1 (1st Cir. 2014) (explaining General Schedule classification and pay system, which "covers the majority of civilian white-collar Federal employees (about 1.5 million worldwide) in professional, technical, administrative, and clerical positions"). Accordingly, Plaintiff's disability discrimination claims can be brought only pursuant to the Rehabilitation Act, not the ADA. *Enica v. Principi*, 544 F.3d 328, 338 n.11 (1st Cir. 2008) ("As a federal employee, Enica is covered under the Rehabilitation Act and not the ADA."). Plaintiff's claims brought pursuant to the ADA should therefore be dismissed.

D. **To the Extent Plaintiff Attempts to Allege a Violation of the Rehabilitation Act's Anti-Retaliation Provision, Plaintiff Has Failed to State a Claim Upon Which Relief Can Be Granted**

Plaintiff references "retaliation" only once in his Complaint, in paragraph seventeen:

17. When Mr. Forbes['] disabilities came to light in his physical examination, the Naval Shipyard *unlawfully retaliated against* Mr. Forbes by rescinding his job offer despite receiving a recommendation for hire with reasonable accommodations after his physical examination on August 6, 2015. The Naval

---

doubts that Plaintiff will be able to allege that he can perform such functions in an amended complaint while maintaining compliance with Federal Rule of Civil Procedure 11(b).

> Shipyard did not contact him for months and officially rescinded their offer only after he contacted them regarding updates with [sic] his employment.

Compl. ¶ 17 (emphasis added). Because Plaintiff does not properly allege that he engaged in "protected conduct," to the extent Plaintiff is attempting to raise a retaliation claim under the Rehabilitation Act, such claim must be dismissed.

The Rehabilitation Act's anti-retaliation protections "apply to 'any individual' who has been intimidated, threatened, coerced, or discriminated against 'for the purpose of interfering with protected rights' under Title VI of the Civil Rights Act of the Rehabilitation Act." *Smith v. The Public Schools of Northborough-Southborough Massachusetts*, 133 F. Supp. 3d 289, 294 n.3 (1st Cir. 2015) (internal quotation marks omitted). In order to establish a prima facie claim of retaliation under the Rehabilitation Act, a plaintiff "must demonstrate that (i) he undertook some protected conduct, (ii) he suffered an adverse employment action, and (iii) that the two were causally linked." *Alvarado v. Donahoe*, 687 F.3d 453, 458 (1st Cir. 2012).

In his Complaint, Plaintiff alleges no "protected conduct" under the Rehabilitation Act. Based on the first sentence of paragraph seventeen, it appears that Plaintiff is alleging that Defendant "retaliated" against him *for having* a disability that required a reasonable accommodation—an act that would be covered by the Rehabilitation Act's anti-discrimination provision, not its anti-retaliation provision. In the second sentence of paragraph seventeen, Plaintiff states that his offer was rescinded "only after he contacted [Defendant] regarding updates with his employment"—suggesting that Plaintiff may be alleging that the "protected conduct" may be seeking an update regarding his application. However, simply asking for an update regarding an application—with nothing more—does not qualify as "protected conduct" under the Rehabilitation Act, as it is not tied to an assertion of rights under that statute (or any anti-discrimination statute). Accordingly, Plaintiff has failed to allege in his Complaint that he

10

"undertook some protected conduct." Furthermore, even if any of Plaintiff's actions could somehow be viewed as asserting protected conduct, he fails to causally link any such conduct to an adverse employment action. *Alvarado*, 687 F.3d at 458. Because Plaintiff has failed to allege the elements of a prima facie case of retaliation, his claim must be dismissed.

### III.    CONCLUSION

For the foregoing reasons Defendant requests that the Court dismiss the instant action in its entirety pursuant to Federal Rule of Civil Procedure 12(b)(6).

Dated: September 8, 2021　　　　　　　　　　　Respectfully Submitted,
　　　　Portland, Maine

　　　　　　　　　　　　　　　　　　　　　　DONALD E. CLARK
　　　　　　　　　　　　　　　　　　　　　　ACTING UNITED STATES ATTORNEY

　　　　　　　　　　　　　　　　　　　　　　/s/ James D. Concannon
　　　　　　　　　　　　　　　　　　　　　　James D. Concannon
　　　　　　　　　　　　　　　　　　　　　　Assistant U.S. Attorney
　　　　　　　　　　　　　　　　　　　　　　100 Middle Street
　　　　　　　　　　　　　　　　　　　　　　East Tower, 6th Floor
　　　　　　　　　　　　　　　　　　　　　　Portland, ME 04101
　　　　　　　　　　　　　　　　　　　　　　(207) 780-3257
　　　　　　　　　　　　　　　　　　　　　　James.Concannon@usdoj.gov

## CERTIFICATE OF SERVICE

      I hereby certify that on September 8, 2021, I electronically filed the foregoing using the CM/ECF system which will send notifications of such filing(s) to counsel of record for all parties.

      /s/ James D. Concannon
      Assistant U.S. Attorney
      100 Middle Street
      East Tower, 6th Floor
      Portland, ME 04101
      (207) 780-3257
      James.Concannon@usdoj.gov