UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| JEFFREY FORBES, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Docket no. 2:21-cv-00103-GZS |
| | ) |
| CARLOS DEL TORO, Secretary of the Navy, | ) |
| | ) |
| | ) |
| Defendant. | ) |

**ORDER ON MOTION TO DISMISS**

Before the Court is the Motion to Dismiss (ECF No. 34) by Defendant Carlos Del Toro, Secretary of the Navy. The Court has reviewed the Motion and associated filings (ECF Nos. 38, 39 & 40). For the reasons below, the Court GRANTS IN PART and DENIES IN PART the Motion.

**I.      LEGAL STANDARD**

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a pleading must contain sufficient factual matter "to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "In evaluating whether a complaint states a plausible claim, [the court] 'perform[s] a two-step analysis.'" Saldivar v. Racine, 818 F.3d 14, 18 (1st Cir. 2016) (quoting Cardigan Mountain Sch. v. New Hampshire Ins. Co., 787 F.3d 82, 84 (1st Cir. 2015)). First, "the court must separate the [pleading]'s factual allegations (which must be accepted as true) from its conclusory legal allegations (which need not be credited)." Morales-Cruz v. University of Puerto Rico, 676 F.3d 220, 224 (1st Cir. 2012) (citing Iqbal, 556 U.S. at 678). Second, the court "must determine

whether the 'factual content . . . allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" Morales-Cruz, 676 F.3d at 224 (quoting Iqbal, 556 U.S. at 678). In assessing whether a complaint adequately states a claim, the Court considers the "facts and documents that are part of or incorporated into the complaint." United Auto., Aerospace, Agric. Implement Workers of Am. Int'l Union v. Fortuño, 633 F.3d 37, 39 (1st Cir. 2011) (quotation marks omitted).

"This standard is 'not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully.'" Saldivar, 818 F.3d at 18 (quoting Iqbal, 556 U.S. at 678); see also Cebollero-Bertran v. Puerto Rico Aqueduct & Sewer Auth., 4 F.4th 63, 70 (1st Cir. 2021) (same). "Although evaluating the plausibility of a legal claim requires the reviewing court to draw on its judicial experience and common sense, the court may not disregard properly pled factual allegations, even if it strikes a savvy judge that actual proof of those facts is improbable." Ocasio-Hernandez v. Fortuno-Burset, 640 F.3d 1, 12 (1st Cir. 2011) (internal citations and quotation marks omitted). Rather, "[t]he relevant inquiry focuses on the reasonableness of the inference of liability" from the facts. Id. at 13.

## II. BACKGROUND

Plaintiff Jeffrey Forbes is a Massachusetts resident. (Compl. (ECF No. 1) ¶ 1.) Forbes suffers from "permanent cognitive, vision, and speech impairments." (Id. ¶ 3.) In March 2015, Forbes applied to become a police officer at Portsmouth Naval Shipyard in Kittery, Maine. (Id. ¶ 4.) The police officer position required, among other responsibilities, "extended periods of physical exertion" from "such activities as running, walking, standing, climbing, bending, driving, and lifting/carrying heavy items." (Ex. A (ECF No. 1-2), PageID # 9.) The position also required

"physical stamina, agility, and strength to defend [oneself], defend others, [and] pursue and apprehend or detain suspects." (Id.)

Forbes received a tentative employment offer (pending satisfaction of pre-employment requirements) in July, and submitted to a physical examination performed by Navy Doctor Dale Harmon the following month. (Id. ¶¶ 6–8.) Dr. Harmon noted conditions that would limit Forbes' ability to perform the tasks required of the police officer position, namely that Forbes was "unable to run"; did "not meet vision requirements for police or [motor vehicle operator]"; had "poor rapid muscular coordination"; and suffered from "mild to moderate speech disturbance." (Ex. A, PageID # 10.) Despite these limitations, Dr. Harmon recommended that the Shipyard hire Forbes and noted that he would require accommodations if hired. (Id., PageID # 11.)

Forbes did not receive news about his employment offer from a Shipyard representative for more than a year. (Compl. ¶ 9.) In October 2016, Forbes contacted the Shipyard and was told that his tentative employment offer had been rescinded. (Id. ¶ 10.) Forbes subsequently received word in November that the Shipyard rescinded the offer because of unsatisfactory results on his physical examination. (Id. ¶ 12.)

After pursuing relief through the Equal Employment Opportunity Commission (id. ¶ 13), Forbes filed suit in federal district court in Massachusetts. Forbes' suit was subsequently transferred to this court. (See 4/9/21 Endorsement Order (ECF No. 20).)

### III. DISCUSSION

In the Complaint, Forbes asserts claims of disability discrimination in violation of both the Rehabilitation Act of 1973, 29 U.S.C. §§ 701 *et seq.*, and the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12101 *et seq.*; and unlawful retaliation, in violation of the Rehabilitation

3

Act.  (See Compl. ¶¶ 15–18; Pl. Response (ECF No. 38), PageID # 37.)  Via the present Motion, Defendant seeks dismissal of all claims.

### A. Failure-to-Accommodate Claims

#### 1. Rehabilitation Act

Under the Rehabilitation Act, "[n]o otherwise qualified individual with a disability . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination . . . under any program or activity conducted by any Executive agency[.]" 29 U.S.C. § 794(a).  To assess whether an individual has suffered employment discrimination in violation of this provision, standards applicable to the ADA apply.  Id. § 794(d); see Calero-Cerezo v. U.S. Department of Justice, 355 F.3d 6, 19 (1st Cir. 2004).

The Rehabilitation Act not only "prohibit[s] disparate treatment," but also "impose[s] an affirmative duty on employers to offer a 'reasonable accommodation' to a disabled employee." Calero-Cerezo, 355 F.3d at 20 (quoting 42 U.S.C. § 12112(b)(5)(A) & García–Ayala v. Lederle Parenterals, Inc., 212 F.3d 638, 646 n.9 (1st Cir. 2000).).  The Act extends its protections to job applicants, in addition to employees.  See 42 U.S.C. § 12112(b)(5)(A).  To assert a claim for failure to accommodate, Plaintiff must plausibly allege three elements:  (1) he has a "disability" as defined at 29 U.S.C. § 705(20); (2) he was a qualified individual, meaning that he was able to perform the essential functions of the role with or without a reasonable accommodation; and (3) despite the Shipyard's knowledge of his disability, it did not offer a reasonable accommodation therefor.  See Calero-Cerezo, 355 F.3d at 20.  Defendant does not dispute that Plaintiff has a disability.  Nor does Defendant contest that the Shipyard knew of Plaintiff's disability and that it did not extend an accommodation (that is, it did not hire Plaintiff with an accommodation).  Rather, the parties'

disagreement at this stage centers on whether Plaintiff has plausibly alleged that he was qualified to fill the police officer position to which he applied.

"An essential function is a 'fundamental job duty' of the employment position the individual with a disability holds or desires." Ward v. Massachusetts Health Rsch. Inst., Inc., 209 F.3d 29, 34 (1st Cir. 2000) (quoting Laurin v. Providence Hosp., 150 F.3d 52, 56 (1st Cir. 1998)). "In the final analysis, the complex question of what constitutes an essential job function involves fact-sensitive considerations and must be determined on a case-by-case basis." Gillen v. Fallon Ambulance Serv., Inc., 283 F.3d 11, 25 (1st Cir. 2002). For purposes of the present Motion, the Court accepts the parties' apparent agreement[1] that the responsibilities outlined in Dr. Harmon's medical report are the essential functions of the position to which Plaintiff applied. See Ward, 209 F.3d at 34 ("[W]e generally give substantial weight to the employer's view of job requirements in the absence of evidence of discriminatory animus[.]"); 42 U.S.C. § 12111(8) ("[I]f an employer has prepared a written description before advertising or interviewing applicants for the job, this description shall be considered evidence of the essential functions of the job.").

In his Complaint and accompanying Exhibit A, Plaintiff has plausibly alleged that he could fulfill the essential functions of the police officer position and thus was a "qualified individual" under the Rehabilitation Act. Initially, Plaintiff claims that he was "able to meet the essential functions and physical requirements of the police officer position[.]" (Compl. ¶ 4.) In addition to so stating, Plaintiff attaches to the Complaint a medical evaluation report from a Navy doctor concluding he could be hired with accommodations. (See Ex. A, PageIDs ## 8–11.) Thus, this exhibit can be read to plausibly assert that Plaintiff was a qualified individual for the police officer position. See Schatz v. Republican State Leadership Comm., 669 F.3d 50, 55 (1st Cir. 2012) ("[I]n

---

[1] See Mot., PageID # 23 & Pl. Response, PageID # 35.

performing our [12(b)(6)] review, we realize too that we can consider implications from documents attached to . . . the complaint") (internal quotation marks and citation omitted). At the present stage, Plaintiff's well-pleaded assertion is entitled to the Court's acceptance. See Ocasio-Hernandez, 640 F.3d at 12–13. Regardless of how Plaintiff characterized the requirements of the police officer job in shorthand in the Complaint, (see Compl. ¶ 4), he has alleged sufficient facts to permit the inference that he was a qualified individual under the Rehabilitation Act.

Because Plaintiff has pled sufficient facts to infer that all three prongs of Rehabilitation Act's failure-to-accommodate test are met, dismissal of this claim is inappropriate.

### 2. ADA

Like the Rehabilitation Act, the ADA prohibits discrimination in employment—including through a failure to accommodate a job applicant's known disability—by employers. See 42 U.S.C. § 12112(a); Benson v. Wal-Mart Stores E., L.P, 14 F.4th 13, 28 (1st Cir. 2021). However, the ADA's definition of "employer" subject to the cause of action the law creates expressly excludes the federal government. See id. § 12111(5)(B); Calero-Cerezo, 355 F.3d at 11 n.1 ("[T]he ADA is not available to federal employees."). Defendant is thus entitled to dismissal of Plaintiff's ADA claim.

Plaintiff opposes this conclusion, arguing that whether the Department of the Navy is a federal employer is a question of fact. (Pl. Response (ECF No. 38), PageID # 36.) This argument is at odds with an allegation made within the Complaint itself. (See Compl. ¶ 2 ("Defendant Department of the Navy, Portsmouth Naval Shipyard . . . is a government agency[.]"). Moreover, whether the Department of the Navy fits within the ADA's exclusion is a question of law, not fact, and thus is amenable to the Court's resolution on a motion to dismiss. The Court readily concludes that the Department of the Navy is a federal agency, and thus is exempt from the anti-

discrimination obligations imposed by the ADA. See, e.g., Honeycutt v. Long, 861 F.2d 1346, 1349 (5th Cir. 1988).

### B.     Retaliation Claim

In addition to prohibiting failures to accommodate disabilities, the Rehabilitation Act provides that "[n]o person shall discriminate against any individual because such individual has opposed any act or practice made unlawful by this chapter." 42 U.S.C. § 12203(a) (ADA provision made applicable to the Rehabilitation Act via 29 U.S.C. § 794(d)). A prima facie case of retaliation under this provision requires a plaintiff to allege facts sufficient to infer that "(1) he or she engaged in protected conduct, (2) he or she was subjected to an adverse action by the defendant, and (3) there was a causal connection between the protected conduct and the adverse action." D.B. ex rel. Elizabeth B. v. Esposito, 675 F.3d 26, 41 (1st Cir. 2012).

Plaintiff claims that he engaged in protected conduct when he followed up with the Shipyard about his employment status, causing the Shipyard to rescind his offer of employment. The Court accepts that the Shipyard's rescission of a tentative employment offer could qualify as an adverse action. Cf. D.B., 675 F.3d at 41 ("An adverse action is one that might well dissuade a reasonable person from making or supporting a charge of discrimination."). Plaintiff has also met his pleading burden—"not an onerous one"—with respect to causation, by alleging that the Shipyard's rescission came within a month or two of his follow-up. Calero-Cerezo, 355 F.3d at 26; see id. at 25–26 (holding one month between protected conduct and adverse action to be sufficient to support a finding of causation); D.B., 675 F.3d at 42 ("[C]lose temporal proximity between protected conduct and an adverse action sometimes may suffice for a prima facie case of retaliation.") (internal quotation marks omitted).

Nevertheless, Plaintiff has not alleged protected conduct. The Rehabilitation Act's retaliation provision protects conduct when it "oppose[s] any act or practice made unlawful" by the Rehabilitation Act. 42 U.S.C. § 12203(a). At its core, then, the category of "protected conduct" covers acts taken to protest behavior the protestor asserts to be illegally discriminatory. See, e.g., Alvarado v. Donahoe, 687 F.3d 453, 458 (1st Cir. 2012) ("Alvarado engaged in protected conduct when he filed an EEO claim"); D.B., 675 F.3d at 41 ("Such advocacy [on behalf of a child's rights under the Rehabilitation Act] plainly constitutes protected conduct"). Plaintiff has claimed that he requested from the Shipyard an update on his application, not that he complained of illegal discrimination by the Shipyard. Nothing in the Complaint or the attached Exhibit suggests that Plaintiff's email to the Shipyard can be construed as a protest or complaint against the Shipyard's behavior. Therefore, his conduct is not analogous to picketing, boycotting, or filing a complaint, all of which are actions taken to oppose purportedly discriminatory behavior. See Mariani-Colon v. Department of Homeland Sec. ex rel. Chertoff, 511 F.3d 216, 223 (1st Cir. 2007). In short, to the extent Plaintiff's claim is that the Shipyard refused to hire him because he is disabled, he makes out a claim not of retaliation, but of discrimination.

IV.     CONCLUSION

For the reasons just stated, the Court DENIES the Motion to Dismiss (ECF No. 34) with respect to the Rehabilitation Act failure-to-accommodate claim, and GRANTS the Motion with respect to the ADA failure-to-accommodate claim and the Rehabilitation Act retaliation claim. The latter two claims are hereby DISMISSED.

SO ORDERED.

/s/ George Z. Singal  
United States District Judge

Dated this 13th day of December, 2021.